**Tony HADDEN, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 13-90-323-CR.**

Court of Appeals of Texas,
Corpus Christi.

March 19, 1992.

Opinion on Motion for Rehearing
April 30, 1992.

**840**

Richard L. Manske, Manske & Manske, El Campo, for appellant.

Daniel W. Shindler, Dist. Atty., Matagorda County Courthouse, Bay City, for appellee.

Before GILBERTO HINOJOSA, KENNEDY and DORSEY, JJ.

## OPINION

GILBERTO HINOJOSA, Justice.

Appellant was convicted of burglary of a habitation. After considering evidence of enhancing convictions and appellant's conduct in the instant case, the jury assessed punishment at forty years' confinement. We reverse and remand.

The evidence reflects that appellant entered the habitation of Pier (Bubba) Lee, Jr., in Matagorda County, and stole several items, including two deer rifles, three shotguns, a pistol, a VCR, and some money. An accomplice corroborated these facts, and appellant confessed. Certain people who received the stolen goods identified the property and stated that appellant sold the property to them. Evidence of guilt was substantial, and the factual sufficiency of the evidence is not challenged.

Appellant's first point of error alleges that the indictment is defective in two respects: 1) that both a felony and a theft must be alleged in the indictment; and 2) that the elements of the offense were alleged in a different order from that found in the statute.

> The indictment alleged that appellant:
> did then and there intentionally and knowingly, without the effective consent of Pier Lee, Jr., the owner thereof, enter a habitation and did attempt to commit and commit theft ...

Appellant was charged with burglary of a habitation. TEX.PENAL CODE ANN. § 30.-02(a)(3) (Vernon 1990). This statute provides:

> (a) A person commits an offense if, without the effective consent of the owner, he:
> (3) enters a building or habitation and commits or attempts to commit a felony or theft.

The general rule regarding the sufficiency of an indictment is that the indictment must "state everything necessary to be proved." *Davila v. State*, 547 S.W.2d 606, 608 (Tex.Crim.App.1977); TEX. CODE CRIM.PROC.ANN. art. 21.03 (Vernon 1989). As the statute quoted above makes clear, to prove burglary the State must establish that the defendant entered the habitation and committed or attempted to commit either a theft·or any felony. Allegations that both were committed are not required in the indictment. *Davila*, 547 S.W.2d at 608. This indictment is not deficient in that respect.

Appellant also argues that the indictment is deficient because it fails to allege attempt and commission of theft in the same order as these elements are set forth in the statute. All that is necessary is that the indictment list the elements of the offense. TEX.CODE CRIM.PROC.ANN. art. 21.03. The indictment did so. Simply changing the order of allegations in the indictment from that in the statute did not render it defective. This indictment sufficiently apprised the defendant with the acts charged, and no confusion or misunderstanding was caused by this insubstantial variation from the statutory language. *See Sanders v. State*, 642 S.W.2d 860, 862 (Tex.App.—Fort Worth 1982, pet. ref'd). Appellant's first point of error is overruled.

By appellant's second point he complains that reversible error occurred when a police officer testified at trial that appellant had signed other confessions in connection with other crimes. He asserts that this and other improperly offered evidence of extraneous offenses violates TEX.R.CRIM. EVID. 404(b).

The statement of facts reflects that the officer was asked whether he agreed to ask the D.A. for leniency in return for a statement from the defendant. The officer then stated:

A Maybe I should clarify something for you, sir.

Q All right.

A The previous ten days before that, Mr. Hadden gave us approximately eight to ten statements in reference to burglaries he had committed.

Appellant's counsel: I object to testimony on his own here and request that the jury be instructed to disregard it.

The Court: Disregard the prior statement.

During subsequent questioning, the police officer interjected that the defendant was under investigation for an "organized criminal activity charge." In addition, while appellant's counsel was questioning the same officer about the defendant's initials on the confession, the following transpired:

Q Okay. What did you tell him?

A I tell him, 'after you have read this whole statement and you reviewed the statement, would you please look it over, put your initials in the proper places, indicating that you have read everything on this page and understand what you are reading.'

Q Okay. Where do you tell him the proper places are?

A The proper places?

Q Yes.

A He knows where the proper places are. Mr. Hadden has signed numerous statements.

Appellant's Counsel: Your honor, again I am going to object to him testifying about things not being asked, nonresponsive. He's doing it in an attempt to prejudice my client and I would ask the court to instruct the jury to disregard it and I would move for a mistrial.

The Court: Listen to his question and answer only his question. The motion for mistrial is denied.

The State argues that this alleged error was not preserved or is harmless because of the overwhelming evidence of guilt.

■ The proper method of preserving error in the admission of improperly offered evidence is for appellant's counsel to: 1) state a timely specific objection, 2) obtain a ruling on the objection from the trial court, 3) move for an instruction for the jury to disregard, 4) obtain a ruling on the instruction and if sustained, have the jury instructed, 5) move for a mistrial, and 6) obtain a ruling on the motion for mistrial. These steps must be taken in sequence, and counsel cannot object and move for an instruction and mistrial without obtaining a ruling on the objection. *See DeRusse v. State,* 579 S.W.2d 224, 236 (Tex.Crim.App. 1979).[1]

■ There are exceptions, however, to this rigorous procedure. Objections may be implicitly overruled. For example, in *Coe v. State,* 683 S.W.2d 431, 435–36 (Tex. Crim.App.1984), the following occurred:

A No sir, they were the other complaining witnesses in the other robberies.

Appellant's counsel: I ask for a mistrial.

The Court: Overruled.

The jury was then instructed to disregard the previous statement. By instructing the jury, the court implicitly sustained the objection. Like this case, *Coe* involved extra-

1. *See generally* Campbell, Guidelines for Preserving Error, 54 Tex.Bar J. 1178, 1180 (1991); *Moody v. State,* 827 S.W.2d 875, 890 (Tex.Crim. App.1992) (error is preserved by objection, request for an instruction, and motion for mistrial); *Darty v. State,* 709 S.W.2d 652, 655 (Tex.

Crim.App.1986) (ruling on objection required to preserve error); *Lasker v. State,* 573 S.W.2d 539, 543 (Tex.Crim.App.1978) (sustained objection does not preserve error absent an instruction and a motion for mistrial); TEX.R.CRIM.EVID. 103(a)(1).

neous offenses. And the Court held this procedure sufficient to preserve error.

■ In the instant case, appellant preserved error because the trial court implicitly sustained the first objection by instructing the jury to disregard the officer's reference to other "statements." At that point, however, no reversible error occurred because an instruction to disregard generally [2] is sufficient to cure error in admission of extraneous offenses. *Moody*, at 890; *Coe*, 683 S.W.2d at 436. Thus, the "door was not opened" and error in subsequent references to extraneous offenses was not waived.

■ Appellant also preserved error the second time the officer testified to other "numerous statements." This time the officer was instructed to answer the questions asked. This implicitly sustained the objection. *Coe*, 683 S.W.2d at 436. The motion for mistrial was overruled. This preserved error regarding whether the second reference to "other statements" signed by the defendant required a new trial. *Id;* *see also Nixon v. State*, 653 S.W.2d 443, 444 (Tex.Crim.App.1983) (overruled motion for mistrial preserved error).

■ The issue presented is whether it was error for the State, through its witness the police officer, to repeatedly and intentionally present to the jury the fact that appellant made other statements to the police. We find that this was error.

"The general rule in all English speaking jurisdictions is that an *accused* is entitled to be tried on the accusation made in the State's pleading and not on some collateral crime, or for being a criminal generally. The rule is now deemed axiomatic and is followed in all jurisdictions." *Young v. State*, 159 Tex.Crim. 164, 261 S.W.2d 836, 837 (App.1953). The primary rationale for the rule is that the issue in a criminal case is whether the defendant committed the crime alleged, and not whether he or she is a criminal generally, or whether the defendant's history of committing crimes in-

creases the probability that the defendant committed the crime involved in the instant case. *See Michelson v. United States*, 335 U.S. 469, 475–76, 69 S.Ct. 213, 218, 93 L.Ed. 168 (1948); *Boutwell v. State*, 719 S.W.2d 164, 174 (Tex.Crim.App.1985). Exceptions to the rule exist, but are not pertinent here. *See* Tex.R.Crim.Evid. 404(b). The State does not contend otherwise. We hold that the repeated and intentional proffer of testimony by the State's witness regarding prior transactions with the police was error in this case. The next issue is whether the error was reversible.

■ In *Harris v. State*, 790 S.W.2d 568, 586–88 (Tex.Crim.App.1989), the Court of Criminal Appeals articulated the proper standard of review for determining whether error in a criminal trial was harmless. Rule 81(b)(2) of the Texas Rules of Appellate Procedure provides:

> If the appellate record in a criminal case reveals error in the proceedings below, the appellate court shall reverse the judgment under review, unless the appellate court determines beyond a reasonable doubt that the error made no contribution to the conviction or punishment.

Tex.R.App.P. 81(b)(2). The scope of review is the entire record. *Harris*, 790 S.W.2d at 586. The evidence is viewed in a neutral, impartial, and even-handed fashion, and unlike the legal and factual sufficiency standard of review, not in the light most favorable to conviction. *Id;* (distinguishing *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)).

■ Harmful error analysis does not merely focus upon whether the record contains sufficient evidence to sustain the conviction, or whether it shows overwhelming evidence of guilt. Rather, harmful error analysis in criminal cases also concerns maintaining the integrity of the process. Our responsibility transcends merely determining whether the conviction was correct, *Harris*, 790 S.W.2d at 585, and involves determining whether the trial was fair. *See also* Tex. Const. Art. I § 10.

---

**2.** This is generally true; however, where the statement is clearly calculated to inflame the jury and an instruction to disregard cannot withdraw the impression from the jury, the error is reversible. *Coe*, 683 S.W.2d at 436.

 To determine whether error is harmful this Court must examine the source, nature, and degree of the error. Additionally, this Court must determine whether declaring the error harmless would encourage further error. *Harris*, 790 S.W.2d at 585.

Unlike most cases involving intentional misconduct by the State,[3] the source of the error here was the police officer. Like prosecutors, police officers are agents of the State. The State calls them as witnesses, pays them, provides training, and secures employment. Police play a different role than the prosecutor. However, these two are on the same side, and share the same goal of conviction after an arrest and charges are filed, although the means through which they achieve this goal are quite different.

 Police officers are usually experienced witnesses due to the extent of time they spend on the witness stand.[4] Through this experience they often acquire a working knowledge of the rules of evidence. Moreover, as State's witnesses, the prosecutor is required to instruct them not to discuss extraneous offenses or other inadmissible matters.

Thus, the source of the error was the State's experienced witness who intentionally presented inadmissible and highly prejudicial evidence to the jury. In other cases, admission of improper statements by experienced police witnesses who knew or should have known the evidence was inadmissible has resulted in reversal. *See Richardson v. State*, 379 S.W.2d 913 (Tex. Crim.App.1964).

 The nature of the error was to present to the jury a prohibited theory of criminal liability. This has been discussed above, and it is enough to state here that in our considered scheme of criminal procedure, the inference that a person committed the crime at issue because he has committed other crimes is usually not one the jury is permitted to draw.

The degree of the error, i.e., its impact on the jury, and collateral effects was serious. The effect of references to extraneous offenses, including references to organized criminal activity and eight or ten other "statements" was prejudicial. The impact this had on guilt or innocence is probably minimal because the evidence of guilt was overwhelming and appellant's counsel failed to object once when the police officer referred to extraneous offenses; however, we cannot find beyond a reasonable doubt that there was no negative impact on the punishment phase of trial.

Because the record shows intentional misconduct, the most important factor in our analysis is to determine whether declaring this error harmless will further encourage police officers, prosecutors, or other agents of the State to intentionally interject inadmissible evidence into other criminal trials. One significant function of the harmful error rule is to deter misconduct by the State. *See Harris*, 790 S.W.2d at 587 ("the court must also determine whether declaring the error harmless would encourage the State to repeat it with impunity."); *See also* TEX. CONST. ART. I, § 10 (Texas courts have a duty to maintain the fairness of criminal trials).

Experience has shown in other contexts that deterrence of police misconduct is most effective when the police knew or should have known they were acting improperly, i.e., when the misconduct is intentional. *See United States v. Leon*, 468

---

3. *See Nixon v. State*, 653 S.W.2d 443, 444 (Tex. Crim.App.1983); *Ruth v. State*, 522 S.W.2d 517, 518 (Tex.Crim.App.1975); *Dowdy v. State*, 385 S.W.2d 678, 679 (Tex.Crim.App.1964); *Jackson v. State*, 363 S.W.2d 947, 948 (Tex.Crim.App. 1963); *Ramsey v. State*, 172 Tex.Crim. 42, 353 S.W.2d 217, 218 (App.1961) (prosecutor asked defendant about an extraneous offense); *but see Duggan v. State*, 778 S.W.2d 465, 468 (Tex.Crim. App.1989) (State's witnesses gave false testimony and prosecutor should have corrected it).

4. After the police officer's first reference to extraneous offenses, counsel for appellant established on the record that the police officer was an experienced witness. While the officer was under oath, counsel for appellant elicited an agreement with the police officer not to volunteer other inadmissible evidence. Despite his sworn agreement not to do so, and instructions from the court, the police officer repeatedly violated his agreement.

U.S. 897, 104 S.Ct. 3405, 3418, 82 L.Ed.2d 677 (1984) (Fourth Amendment exclusionary rule applies when police engage in willful or negligent conduct depriving the defendant of some right) (citing *United States v. Peltier,* 422 U.S. 531, 95 S.Ct. 2313, 2320, 45 L.Ed.2d 374 (1975)).

■ Like prosecutors, police officers and other experienced State witnesses are officers of the State, *see Lackey v. State,* 148 Tex.Crim. 623, 190 S.W.2d 364, 365 (App.1945) (prosecutors are officers of the State), and subject to the duty that they not intentionally interject evidence which they know or should know is inadmissible. *Id.* If the prosecutor or a State's witness intentionally presents to the jury either false or inadmissible evidence, this factor weighs most heavily in favor of finding the error reversible. Failure to do so merely invites future problems. The statement of facts in the instant case shows that the police officer intentionally interjected evidence which he knew or should have known was inadmissible. And this occurred after admonishments by counsel, an agreement not to repeat such statements, a number of objections to these statements, and instructions by the court to both the jury and the officer.

Because of the seriousness of the error, its probable prejudicial effect on the jury's deliberations, and our duty to deter further intentional admission of improper prejudicial evidence by the State and its officers, we reverse and order a new trial. Tex. R.App.P. 81(b)(2). We order appellant's conviction REVERSED and REMAND this cause for a fair trial.

## OPINION ON MOTION
## FOR REHEARING

The State has filed a motion for rehearing in which it argues that we have mischaracterized the record, and erred by finding the error preserved, by misinterpreting Tex.R.App.P. 81(b)(2), and by failing to reverse only for punishment. The motion for rehearing is overruled.

In support of its argument that we have mischaracterized the record, the State merely quotes one portion of the record, and ignores the preponderance of the officer's testimony. Portions of the record not quoted by the State reveal that the police officer who testified volunteered facts indicating that appellant had been in contact with the police on previous occasions. Most significantly, under this first point the State does not quote or refer to the police officer's statements in the record indicating that the defendant was suspected of organized crime activities. These statements were not a reasonable response to the questions asked, and they occurred after the court instructed the jury to disregard these statements, and the police officer agreed under oath not to make future improper references to extraneous offenses.

The statement of facts shows a pattern of conduct which can only be explained as an intentional and willful disregard of the rules of evidence, motion in limine, and the officer's agreement, which is on the record, not to volunteer prejudicial information. The State's first point of error in its motion for rehearing is overruled.

The State's second point complains that the error was not preserved. We have already discussed this point above, however, recent authority from the Court of Criminal Appeals reinforces our holding that the error was preserved. *See Fuller v. State,* 827 S.W.2d 919, 925 (Tex.Crim. App.1992). Appellant's second point of error is overruled.

■ The State's third and fourth points of error complain that this Court erred in failing to properly apply the harmless error rule. The State's position is that no error can be reversible in the guilt/innocence stage if the evidence of guilt is overwhelming. Essentially, it argues that appellate review of convictions is foreclosed after overwhelming evidence of guilt is admitted. We disagree.

If this were true, then defendants in cases in which the evidence of guilt was overwhelming would not be able to enforce their right to a fair trial by obtaining a new trial on appeal. This would provide the State with the opportunity to admit over-

whelming evidence of guilt, and then improperly admit inadmissible and highly prejudicial evidence, such as that involving extraneous offenses.[1] We refuse to subscribe to the theory that once overwhelming evidence of guilt is admitted the State is free to ignore, with no chance of reversal on appeal, the rules of evidence and procedure which are designed to provide fair trials to **all accused.**

The Court of Criminal Appeals may have been troubled with scenarios such as this case when it wrote: "an appellate court should be concerned with the integrity of the process leading to the conviction. ... In addition, the Court must also determine whether declaring the error harmless would encourage the State to repeat it with impunity." *Harris,* 790 S.W.2d at 587. Following the teachings of *Harris,* in our opinion, the repeated intentional admission of inadmissible evidence "disrupted the juror's orderly evaluation of the evidence" ... thus, "the conviction was tainted." *Id.* 790 S.W.2d at 588. The State's third and fourth points of error are overruled.

■ By the State's fifth point of error it complains that this Court erred in reversing for a new trial, and not for a new trial only on the punishment phase. We believe the proper remedy in this case, which involves the intentional proffer of inadmissible extraneous offenses, is a new trial. This will deter the State from intentionally seeking to present to the jury improper and inadmissible testimony in the future. Failure to remand for a new trial merely invites future problems. The state's fifth point of error and its motion for rehearing are overruled.